## GREER v. HARTNEY ET AL.

DIVISION LINES: SURVEY: EVIDENCE CONSIDERED.

*Appeal from Polk District Court.*

WEDNESDAY, MARCH 17.

ACTION to recover a tract of land in block 15 in Hall's addition to the city of Des Moines, the tract being thirty-nine feet wide, and one hundred and seventy-three feet long. The plaintiff claims to be the owner of lot one in said block, and that the thirty-nine feet in question constitute the south thirty-nine feet of said lot. The defendants claim to be the owners of the lot in the same block immediately south of lot one: to-wit, lot four. They also claim that the thirty-nine feet in question constitute the north thirty-nine feet of said lot four. They also claim that they have occupied the land in question for more than ten years prior to the commencement of the action, but they do not aver that they have occupied it otherwise than under a claim that it was a part of lot four.

The case was referred to a referee, who reported, in substance, that the plaintiff is the owner of lot one, and the defendants of lot four; that lot one includes the thirty-nine feet in question; that the defendants, and those under whom they claim title to lot four, have occupied the thirty-nine feet for a period commencing more than ten years prior to the commencement of the action, but that they occupied it in the belief that it was a part of lot four. Upon these facts, he reported that the plaintiff was entitled to the possession of the thirty nine feet, and recommended a decree accordingly.

The defendants filed exceptions to the report, but the exceptions were overruled, and a decree entered in accordance with the report. The defendants appeal.

*D. Donovan* and *Maxwell & Witter*, for appellants.

*Bannister & Phillips*, for appellee.

ADAMS, CH. J.—The evidence shows that the thirty-nine feet in question were enclosed by the defendant upon the supposition that the same constituted a part of lot four; that a dwelling house was erected in such a way

that a part of it stood upon the thirty-nine feet, and the other part upon what is confessedly lot four; that the premises thus enclosed and built upon were occupied as the residence of the defendants for nearly eight years, and their claim to the thirty-nine feet was never questioned until the commencement of this action.

If the south line of lot one is far enough south to include the thirty-nine feet in lot one, as the court below decreed it to be, then the whole of block 15 is thirty-nine feet further south than the defendants supposed it to be. The evidence tends to show that the defendants have occupied in accordance with a certain survey, and that other persons occupying lots in the block have occupied in accordance with the same survey.

Block 15 is bounded by Division street on the north, and Bluff street on the east. No question is made in regard to the location of Bluff street. But in regard to the location of Division street the parties differ if the lots are all full lots, the plaintiff claiming that it is thirty-nine feet further south than the defendants admit it to be.

The burden of proof is, of course, upon the plaintiff. It is insisted by the defendants that she has failed to prove her allegations.

A considerable amount of evidence was introduced upon both sides, but a large portion of it is unintelligible. Some kind of a plat, called a plat of Hall's addition, was offered in evidence. Whether it was really introduced, or not, the record does not show. When offered the defendant objected to its introduction, and the objection was overruled. Possibly, we should assume that it was then introduced. But what precisely the plat was, we are left in doubt. If it was introduced, it was introduced in the midst of the testimony of one Pelton, city engineer of the city of Des Moines. But he testifies that he never saw the original plat; that he has wanted it and inquired for it, but that it has never been found, to his knowledge. He seems, while testifying, to have had before him a copy. Without saying that he has a copy before him, he uses this expression: "I believe I made that copy from the recorded copy at the court house." It seems probable that this is what was introduced in evidence, if anything was. But Pelton says in his testimony that he "would not swear that it is exactly with the recorded plat."

Again we find something in the abstract purporting to be a plat of certain lots, blocks and streets, marked "Exhibit 4." We also find a statement in the abstract that "the plat offered in evidence was marked Exhibit 4." But there is no statement that what appears in the abstract is what was offered, or a copy of what was offered. The appellant sets out certain evidence and then adds: "The above and foregoing is all the evidence that was introduced by both parties on the trial." "Exhibit 4" is not a part thereof. Pelton testifying in regard to the plat makes this expression: "The plat shows Ascension street and School street to be straight and parallel." "Exhibit 4" as it appears in the abstract does not show School street at all. Again, he says he found no discrepancies east of Third street, except in block 25. "Exhibit 4" shows no block 25 east of Third street, but shows a block of that number west of Third street.

When we come to Pelton's testimony in regard to his measurements, we

find equally great uncertainty and confusion. He testifies in these words: "We made measurements to ascertain where the fence was that enclosed that lot there, that shows where the location of the lot is. We measured first, how far north the line fence was from the middle of Bluff street." But the fact appears to be that the fence ran at right angles to Bluff street. When he comes to give his reason for believing that the defendant's lot is farther south than they have understood it to be, he says: "The added distances on the east and west sides of Third street differ about thirty-three feet, I believe; the width of the lots on the east side of the street amount to more than on the west side. The added distances on the west side of Third street, according to the plat, are greater than they are on the east side." We will not say that it is impossible to give a rational explanation of the foregoing, but none occurs to us at present. Third street, if we are allowed to judge from the copy of the plat before us, runs north and south. It appears to be straight, and to be intersected by parallel streets running at right angles to it. The aggregate width of the lots between these streets, fronting on Third street, it appears to us must be equal. So also they must appear to be equal upon the plat so far as they are indicated by the spaces, if the plat is accurately drawn. So far as the width of the lots is indicated by figures, the aggregate upon one side would of course be greater than on the other if the figures are wrong. But the witness seems to say that the lots on the west side appear by the plat to amount to more than on the east side, whereas the lots themselves amounted really to less.

The same witness, speaking of the width of block 15, says: "Division street is the street north of the property claimed by Mrs. Greer, of block 15. The lot does not extend into lot one, nor is any part of lot one in the street. It is a full lot; it is 55 feet; lot 4 is the same. I think I narrowed the block 33 feet. I merely assumed that there was an error in block 15." He afterwards shows that he did not narrow the block at all; that it was block 25 which he narrowed, which had the effect to locate block 15 farther south than the defendants understood it to be.

The determination of this case depends upon whether he was justified in narrowing block 25; that is, in so establishing the corners upon the earth as to make it narrower than it was indicated upon the plat. He says: "I assumed that the figures were wrong, and narrowed up all the lots in the block." At another time he says: "The error in block 25 was not all assumption." He then proceeds to speak of a measurement from School street. But School street is not shown upon any plat before us, and besides the witness' language is too indefinite and vague to enable us to arrive at any conclusion upon the subject.

The same witness at the close of his testimony says: "I never ascertained that Mrs. Hartney occupied lot 1, of block 15, by any professional survey. I went up with Mr. Greer and made a little measurement, that is the only way I ascertained it. I never made a professional survey; as a matter of fact, I do not know whether Mr. Hartney is occupying Mrs. Greer's lot or not."

The evidence shows that he did know where her fence was; what he meant to say, then, was that he did not know where the line between lots 1 and 4 was.

Only one other surveyor was examined. He was inclined to think that Mrs. Hartney's fence was correctly located. We are unable to discover any evidence that would justify us in saying that it is not.

REVERSED.